IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 08-10002-18-JWB

TONY D. TRAN,

    Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant's motion to suppress. (Doc. 538.) The motion is fully briefed and is ripe for decision. (Docs. 540, 541.) For the reasons stated herein, the motion to suppress (Doc. 538) is DENIED.

**I. Background**

In 2008, Defendant pled guilty to two counts of a superseding indictment charging unlawful possession with intent to distribute the controlled substance methylenedioxymethamphetamine (MDMA), and unlawful possession of a firearm in furtherance of a drug trafficking crime. (Docs. 312, 313.) He was sentenced by the Hon. Wesley E. Brown to a controlling term of 78 months imprisonment, to be followed by four years of supervised release. (Doc. 394.)

On October 19, 2018, Defendant was arrested for an alleged violation of the terms of his supervised release. A Violation Report by the United States Probation Office alleges that on June 19, 2018, Defendant was arrested by Lee Summit, Missouri, police officers after being found in

possession of methamphetamine and related paraphernalia. (Doc. 531.) A hearing on revocation of Defendant's supervised release is set for March 4, 2019. (Doc. 539.)

Defendant has filed a motion to suppress all evidence stemming from his seizure on June 19, 2018, and from the search of his person and vehicle on that date. He claims the police officers' actions violated his rights under the Fourth Amendment. (Doc. 538 at 1.) In response, the government contends the exclusionary rule does not apply to supervised release revocation hearings, such that the motion should be summarily denied. (Doc. 540). Defendant acknowledges the Supreme Court has held that the exclusionary rule does not apply to state parole revocation hearings (in *Pennsylvania Bd. of Prob. & Parole v. Scott,* 524 U.S. 357 (1998)), and that several circuit and district courts have similarly found the rule to be inapplicable to supervised release revocation hearings. But he contends dissimilarities between the revocation of supervised release and the parole proceedings at issue in *Scott* – including the imposition of a new criminal sentence upon revocation of supervised release, as opposed to reinstatement of a previously imposed sentence upon revocation of parole – warrant application of the exclusionary rule in this proceeding. Defendant notes there is no Tenth Circuit case directly on point, and he argues that other courts extending *Scott* to supervised release revocations "do not address these distinctions in detail." (Doc. 541 at 4.)

**II. Discussion**

In *Scott*, the Supreme Court held that the exclusionary rule does not apply in state parole revocation hearings. *Scott*, 524 U.S. at 359. The Court noted the exclusionary rule was a judicially created means of deterring unlawful searches and seizures, and that it did not proscribe the introduction of illegally seized evidence in all proceedings but "only in contexts 'where its remedial objectives are thought most efficaciously served.'" *Id.* at 363 (citations omitted.)

"Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its 'substantial social costs.'" *Id.* The Court noted that "[r]ecognizing these costs, we have repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Id.*

Applying these principles, the Supreme Court found that application of the rule to parole revocation proceedings would hinder the functioning of state parole systems, would alter the traditionally flexible and administrative nature of those proceedings, and would provide only minimal deterrence benefits. Among other things, the Court noted the "costs of excluding reliable, probative evidence are particularly high in the context of parole revocation proceedings":

> Parole is a variation on imprisonment of convicted criminals, in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements. The State thus has an overwhelming interest in ensuring that a parolee complies with those requirements and is returned to prison if he fails to do so. The exclusion of evidence establishing a parole violation, however, hampers the State's ability to ensure compliance with these conditions by permitting the parolee to avoid the consequences of his noncompliance. The costs of allowing a parolee to avoid the consequences of his violation are compounded by the fact that parolees (particularly those who have already committed parole violations) are more likely to commit future criminal offenses than are average citizens. Indeed, this is the very premise behind the system of close parole supervision.

*Id.* at 365 (citations and internal quotation marks omitted.)

As Defendant points out, the Court also found the exclusionary rule was incompatible with the administrative nature of state parole proceedings, many of which were conducted informally by parole boards not comprised of judicial officers or lawyers. *Id.* at 366. But the Court additionally concluded that the deterrence benefit of the exclusionary rule in this context would not outweigh its costs, because it would have little deterrent effect upon an officer who was unaware of the subject's parole status. Even if the officer was aware of that status, the effect would

3

be minimal because the focus of police investigation is not upon ensuring compliance with parole conditions, but upon obtaining convictions of those who commit crimes, such that officers will be adequately deterred from violating Fourth Amendment rights by application of the exclusionary rule to criminal trials. *Id.* at 368.

Based on *Scott* and its reasoning, courts have overwhelmingly concluded the exclusionary rule does not apply to supervised release revocation proceedings in federal court. As the Seventh Circuit recently observed, a contrary ruling would "put us in direct conflict with every other court of appeals to consider the question." *United States v. Phillips*, 914 F.3d 557, 560 (7th Cir. 2019) (citing *United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999); *United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008); and *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992)). The *Phillips* court acknowledged that the administrative parole revocation hearings in *Scott* were "an imperfect fit" for supervised release revocations, but pointed out that supervised release proceedings were more similar to the *Scott* parole hearings than to a criminal trial, and the Supreme Court has repeatedly declined to extend the exclusionary rule beyond criminal trials. *Phillips*, 914 F.3d at 559. Additionally, *Phillips* found, the minimal deterrence benefit noted by the Supreme Court applies with equal force to supervised release revocations: "In both instances, when the reason for revocation is the commission of a new crime, the prosecuting authority has the option to revoke a defendant's parole or supervised release rather than pursue a new case. If the Supreme Court found the added deterrence benefits insufficient to justify the exclusionary rule in a parole hearing, logic compels the conclusion that the same result must apply for supervised release." *Id.*

Here in the District of Kansas, Judge Lungstrum has twice found the exclusionary rule does not apply to supervised release revocations. *United States v. Allison*, No. 05-20112-JWL, 2015

4

WL 1608652, *2 (D. Kan. Apr. 10, 2015); *United States v. Quinn*, 2007 WL 437734 (D. Kan. Feb. 6, 2007). He pointed out that the Tenth Circuit previously found the exclusionary rule does not apply to parole and probation revocation proceedings, and he predicted the circuit would reach the same conclusion with respect to supervised release revocation. *Allision*, 2015 WL 1608652, at *2 (citing *United States v. Finney*, 897 F.2d 1047 (10th Cir. 1990)).

An examination of the *Finney* case supports that conclusion. In *Finney*, a federal probationer claimed her probation was revoked as a result of an unlawful search by state police officers. *Id.* at 1047. The Tenth Circuit observed that of the eight circuits to have considered the issue, seven concluded that the exclusionary rule does not apply to probation or parole revocation. *Id.* at 1048. In adopting this majority position, *Finney* endorsed the conclusion of one court that application of the exclusionary rule in this context "would not achieve a deterrence as much as it would inhibit the interests of the public in the pursuit of its protection against 'convicted criminals who have abused the liberty afforded them.'" *Id.* (citing *United States v. Bazzano,* 712 F.2d 826, 831 (3d Cir. 1983), *cert. denied*, 465 U.S. 1078 (1984)). *Finney's* conclusion applies with equal force to revocation of supervised release, which is materially indistinguishable from probation revocation insofar as the deterrent effect on law enforcement officers and the societal costs from excluding reliable evidence are concerned.

*Finney* noted some courts have recognized an exception if the "police knew or had reason to know that the target of their search was a probationer." *Id.* (quoting *Bazzano*, 712 F.2d at 833, n.1). *Finney* avoided deciding whether to recognize such an exception because even if it did, it would not apply to the facts of that case. *Id.* *Bazzano* similarly did not reach the question. *Bazzano,* 712 F.2d at 831, n.1. One of the cases cited by *Bazzano* as supporting such an exception, *United States v. Rae*, 678 F.2d 382 (2d Cir. 1982), applied the exclusionary rule in a revocation proceeding

5

because a probation officer searched a probationer's home without a warrant. *Id. at* 388. That decision no longer appears viable after *Griffin v. Wisconsin,* 483 U.S. 868 (1987), which held that a probation officer's warrantless search of a probationer's residence, pursuant to a state regulation, was reasonable under the Fourth Amendment. At any rate, the Supreme Court essentially precluded such an exception in *Scott*, where it declined to adopt "a special rule for those situations in which the officer performing the search knows that the subject of his search is a parolee." *Scott*, 524 U.S. at 367. The Court noted it had never suggested the exclusionary rule has to apply in every circumstance where it might provide marginal deterrence, and that a special rule of this sort "would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." *Id.* at 368. Moreover, the additional deterrence from such a special rule "would be minimal," because a police officer's primary interest is in obtaining convictions, and "even when the officer knows that the subject of his search is a parolee, the officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials." *Id.* Finally, *Scott* noted that police and probation officers alike are aware that unconstitutionally seized evidence can lead to dismissal of charges in a criminal case, and that other deterrents – such as departmental discipline and the threat of damage suits – further discourage unlawful acts. In sum, the reasoning of *Scott* and *Finney* support a conclusion that the exclusionary rule does not apply in a supervised release revocation proceeding.

Some cases have stated that the exclusionary rule does not apply in revocation hearings "absent police harassment of probationers," implying that harassment could be a valid basis for applying the exclusionary rule. *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992) (citing *United States v. Wiygul*, 578 F.2d 577, 578 (5th Cir. 1978)). Like *Finney*, the court need not decide whether such an exception should be recognized because, even if it should, it would not apply to

because a probation officer searched a probationer's home without a warrant. *Id. at* 388. That decision no longer appears viable after *Griffin v. Wisconsin,* 483 U.S. 868 (1987), which held that a probation officer's warrantless search of a probationer's residence, pursuant to a state regulation, was reasonable under the Fourth Amendment. At any rate, the Supreme Court essentially precluded such an exception in *Scott*, where it declined to adopt "a special rule for those situations in which the officer performing the search knows that the subject of his search is a parolee." *Scott*, 524 U.S. at 367. The Court noted it had never suggested the exclusionary rule has to apply in every circumstance where it might provide marginal deterrence, and that a special rule of this sort "would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." *Id.* at 368. Moreover, the additional deterrence from such a special rule "would be minimal," because a police officer's primary interest is in obtaining convictions, and "even when the officer knows that the subject of his search is a parolee, the officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials." *Id.* Finally, *Scott* noted that police and probation officers alike are aware that unconstitutionally seized evidence can lead to dismissal of charges in a criminal case, and that other deterrents – such as departmental discipline and the threat of damage suits – further discourage unlawful acts. In sum, the reasoning of *Scott* and *Finney* support a conclusion that the exclusionary rule does not apply in a supervised release revocation proceeding.

Some cases have stated that the exclusionary rule does not apply in revocation hearings "absent police harassment of probationers," implying that harassment could be a valid basis for applying the exclusionary rule. *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992) (citing *United States v. Wiygul*, 578 F.2d 577, 578 (5th Cir. 1978)). Like *Finney*, the court need not decide whether such an exception should be recognized because, even if it should, it would not apply to

because a probation officer searched a probationer's home without a warrant. *Id. at* 388. That decision no longer appears viable after *Griffin v. Wisconsin,* 483 U.S. 868 (1987), which held that a probation officer's warrantless search of a probationer's residence, pursuant to a state regulation, was reasonable under the Fourth Amendment. At any rate, the Supreme Court essentially precluded such an exception in *Scott*, where it declined to adopt "a special rule for those situations in which the officer performing the search knows that the subject of his search is a parolee." *Scott*, 524 U.S. at 367. The Court noted it had never suggested the exclusionary rule has to apply in every circumstance where it might provide marginal deterrence, and that a special rule of this sort "would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." *Id.* at 368. Moreover, the additional deterrence from such a special rule "would be minimal," because a police officer's primary interest is in obtaining convictions, and "even when the officer knows that the subject of his search is a parolee, the officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials." *Id.* Finally, *Scott* noted that police and probation officers alike are aware that unconstitutionally seized evidence can lead to dismissal of charges in a criminal case, and that other deterrents – such as departmental discipline and the threat of damage suits – further discourage unlawful acts. In sum, the reasoning of *Scott* and *Finney* support a conclusion that the exclusionary rule does not apply in a supervised release revocation proceeding.

Some cases have stated that the exclusionary rule does not apply in revocation hearings "absent police harassment of probationers," implying that harassment could be a valid basis for applying the exclusionary rule. *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992) (citing *United States v. Wiygul*, 578 F.2d 577, 578 (5th Cir. 1978)). Like *Finney*, the court need not decide whether such an exception should be recognized because, even if it should, it would not apply to

the circumstances alleged by Defendant. Defendant's motion claims that on June 19, 2018, at 12:45 a.m., Lee's Summit Police Officer Andrew Jones responded to a call about a stranded motorist on Highway I-470. (Doc. 538 at 2.) When he arrived, he saw a truck that appeared to have rolled off the shoulder onto the grass. Jones parked with his emergency lights on and went over to the truck, where he found Defendant asleep in the driver's seat with the engine running. According to the motion, the following occurred:

> Officer Jones knocked on the window and woke Mr. Tran. Mr. Tran was responsive, calm, and cooperative, and oriented as to time and place. He explained that he was tired after working a long day. He had pulled over on his way home to rest, and must have fallen asleep without putting the truck in park. Officer Jones asked several times whether Mr. Tran had been drinking alcohol; Mr. Tran assured him that he had had only a single beer earlier in the evening.
>
> Officer Jones asked Mr. Tran for his ID, and then directed him out of the car, to the shoulder of the highway where two additional uniformed officers waited, and up to the front of Officer Jones's patrol car. There the officer had Mr. Tran perform two roadside impairment tests (the Horizontal Gaze Nystagmus and the Romberg Test). Mr. Tran passed these tests—Officer Jones told one of the other officers (out of earshot of Mr. Tran) that Jones did not see signs of much if any alcohol, and "didn't see anything to suggest marijuana or anything like that." [footnote omitted] At that point, Officer Jones told his fellow officer that "I guess I'm just going to get him to get somebody and get him home."
>
> But instead of simply returning Mr. Tran's ID to him and telling him that he was free to leave—either by driving his truck back onto the road, or by calling a friend or a cab or Uber for a ride—Officer Jones directed Mr. Tran to continue to "hang out here for a second" on the shoulder of the road. Officer Jones then walked over to the truck while the other officers led Mr. Tran around Jones's patrol car (and out of sight of Jones's dash cam). When Officer Jones returned, he started to ask Mr. Tran if he knew anyone who could come to pick him up at that hour, but then quickly switched into investigative mode.
>
> By this time, the officers had checked Mr. Tran's ID and learned that he was on supervised release for a nine-year-old drug-and-gun conviction. Officer Jones pointed out to Mr. Tran that "you're on federal probation," and asked Mr. Tran if he had anything illegal on him or in the truck. Mr. Tran admitted that, while working earlier in the day, he had taken methamphetamine and a pipe away from a coworker and put it in his pocket. Officer Jones then handcuffed Mr. Tran, led him back to the front of the patrol car, and searched his pockets, retrieving a broken glass pipe containing methamphetamine residue and a small plastic bag containing methamphetamine. Officer Jones advised Mr. Tran that he was under arrest for

> controlled substances and paraphernalia. He put Mr. Tran in a patrol car and then proceeded to search his truck, finding more methamphetamine in a backpack in the passenger seat. The officers took Mr. Tran to detention and placed him on a 24-hour hold. Later that day, Lee Summit Police Officer Phillip Stewart interviewed Mr. Tran. According to Officer Stewart's report, Mr. Tran admitted putting his coworker's methamphetamine pipe and bag in his pocket, and admitted using methamphetamine himself within the last few weeks. He denied knowing that there was methamphetamine in his backpack.

*Id.* at 2-4.

Nothing about this encounter suggests improper harassment of a sort that might warrant application of the exclusionary rule. Running a computer check of a driver's criminal history and asking the driver about that history are permissible inquiries in a traffic stop. *See United States v. Cone,* 868 F.3d 1150, 1153 (10th Cir. 2017). In this instance, the officers clearly did not seek Defendant out because of his supervision status; they were summoned to the scene based on a report of a motorist in need of aid. The officers ran a permissible check on Defendant's background, discovered his supervised status, and asked him if he had any contraband. According to the motion, Defendant promptly disclosed that he was in possession of a controlled substance. Even assuming for purposes of this motion that the exclusionary rule might apply to some instances of police harassment of a supervised individual, Defendant's motion fails to allege any circumstances justifying its application here or warranting an evidentiary hearing concerning the officers' actions.

In sum, the logic of *Scott* compels a conclusion that the exclusionary rule does not apply to this supervised release revocation proceeding. The deterrence benefit from applying the rule in this context would be minimal, while the cost to society from excluding evidence of wrongdoing by persons under a criminal justice sentence is significant. *Finney*, 897 F.2d at 1048 ("application of the exclusionary rule at this stage would not achieve a deterrence as much as it would inhibit

8

the interests of the public in the pursuit of its protection against 'convicted criminals who have abused the liberty afforded them.'") (citation omitted.)

IT IS THEREFORE ORDERED this 1st day of March, 2019, that Defendant's motion to suppress (Doc. 538) is DENIED.

     s/ John W. Broomes     
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE